IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS,
EASTERN DIVISION

| | |
|---|---|
| HARRY MILLER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 05 C 7095 |
| v. ) | |
| ) | Judge Mark Filip |
| CHICAGO PUBLIC LIBRARY, et al. ) | |
| ) | |
| Defendants. ) | |

MEMORANDUM OPINION AND ORDER

Harry Miller ("Mr. Miller" or "Plaintiff") has sued the Chicago Public Library ("CPL"), the Chicago Police Department ("CPD"), the Illinois Attorney General, the Federal Bureau of Investigation ("FBI"), and the President of the United States, George W. Bush (collectively "Defendants") for $9,000,000. (D.E. 9.) This matter is before the Court for consideration of Plaintiff's application for leave to proceed *in forma pauperis* (D.E. 7, 41) and for appointment of counsel (D.E. 8, 42), as well as motions to dismiss filed by the Illinois Attorney General, the FBI, and CPD. (D.E. 13, 30, 37.) For the reasons explained below, the Court grants all three motions to dismiss in their entirety. (D.E. 13, 30, 37.) Independently, the Court, pursuant to 28 U.S.C. § 1915(e)(2)(B), dismisses without prejudice any remaining claims for failing to state a claim upon which relief can be granted and because the President is absolutely immune from this civil suit concerning his official duties. The motions for leave to proceed *in forma pauperis* (D.E. 7, 41) and for appointment of counsel (D.E. 8, 42) are denied as moot.

BACKGROUND

Mr. Miller, by his own account, is mentally ill, as he suffers from paranoid schizophrenia sufficiently acute that he receives Social Security disability benefits as a result of the affliction.

(See D.E. 7 at 2.) This diagnosis is consistent with various representations in his written filings and his demeanor in court and in dealing with the Court's staff. The public record reflects that Mr. Miller has been suffering from paranoid schizophrenia for an extended period of time. In this regard, the Court notes that Mr. Miller filed a federal lawsuit in the Eastern District of New York in 1996 that is strikingly similar in many respects to the instant case. *See Miller v. Silverstein, et al.*, No. 93-CV-2871, Dismissal Order (E.D.N.Y. Nov. 5, 1996) (Amon, J.). In dismissing that case, Judge Amon of the Eastern District of New York noted the "obviously delusional" nature of, in her view, at least some of Mr. Miller's claims. (*Id.* at 7; *see also id.* at 1 ("Harry Miller is a Vietnam veteran on full disability for psychological reasons").) Judge Amon nonetheless proceeded to analyze the claims on the merits and explain why they were properly subject to dismissal in a lengthy twenty-eight page opinion.

On appeal, the Second Circuit did not even assess the merits of Judge Amon's substantive rulings. *See Miller v. Silverstein, et al.*, 122 F.3d 1056, 1997 WL 557620 (2d. Cir. 1997) (unpublished). Instead, the Second Circuit summarily affirmed on the grounds that the suit in its entirety failed to survive the "frivolous," "irrational or wholly incredible," or "fantastic or delusional" standards for dismissal set forth in Supreme Court teaching on this subject. *See id.* at *1-2 (citing, *inter alia*, *Denton v. Hernandez*, 504 U.S. 25, 26 (1992)).[1]

The Court will proceed in this case to analyze Mr. Miller's putative claims on the merits, as did District Judge Amon in the 1990s litigation in New York City. However, as explained

---

[1] The Court does not cite the unpublished Second Circuit decision as precedent or consider it to be such, although the Supreme Court authority cited therein is naturally binding on this Court. Instead, the Court notes the existence of the Second Circuit decision as it implicates potential preclusion issues, discussed later. The Court also discusses the New York City litigation insofar as it provides general factual background information helpful to provide context for the instant suit.

below, the bulk of this case, if not the entirety of it, does not survive review under *Denton*. This case presents the sorts of claims that "describ[e] fantastic or delusional scenarios"—scenarios sufficiently outside the bounds of plausible rationality that the exceptional step of threshold dismissal under *Denton* is warranted. Nonetheless, in the interests of thoroughness, this Court, like District Judge Amon in New York City, will proceed to analyze Mr. Miller's claims on the merits as well in dismissing the suit.

A. Procedural Background to the Instant Case

Plaintiff initially filed this action on December 19, 2005. (D.E. 1.) On the same day, he filed an amended complaint ("First Amended Complaint") that included additional "background" but did not make substantial changes with respect to the asserted cause of action. (*See* D.E. 9.) It did, however, purport to add President George W. Bush as a defendant (*id.*)—notwithstanding that, as Mr. Miller discovered when he previously attempted to sue President Clinton in his New York suit in the 1990s, and as explained further below, the President of the United States is absolutely immune from civil suit relating to the discharge of his official duties. *See, e.g., Miller v. Silverstein, et al.*, No. 93-CV-2871, Dismissal Order at 8 n.4 (E.D.N.Y. Nov. 5, 1996) (Amon, J.) (citing *Nixon v. Fitzgerald*, 457 U.S. 731 (1982)).

In the instant litigation, Plaintiff also filed suit in the Law Division of the Circuit Court of Cook County, Illinois, on December 16, 2005. (D.E. 40.) The facts and legal theories in Plaintiff's state court action were not meaningfully different than those advanced in the federal complaints. (*See id.*) Defendants in the state court matter filed a notice of removal; on March 2, 2006, the two actions were consolidated in this Court as Case No. 05-7095. (*Id.*)

B. Factual Averments[2]

---

[2] Given Mr. Miller's *pro se* status, the Court has construed his averments generously.

3

The factual allegations in this case are similar to those advanced in the 1990s New York City case. The complaints in this case, like the ones in the New York City case, are not models of clarity. However, both suits involved allegations of federal assassinations around the globe and assert that the assassinations must be stopped. In this regard, it seems that Mr. Miller suggests in both suits that he was involved as an assassin, and that the local police (then of the City of New York, now of the City of Chicago and/or the Chicago Public Library) are involved in a cover-up of the federal assassinations efforts. The assassination efforts during and predating the 1990s allegedly involved President Clinton, Ross Perot, and Colin Powell, among others; the present complaints reference President Bush, Illinois Attorney General Lisa Madigan, and Illinois Governor Rod Blagojevich. As discussed further immediately below, both suits also involve allegations that local law enforcement officers assaulted Mr. Miller in fantastic ways and vaguely suggest that federal law enforcement officers have subsequently interceded as "muscle" to support the assault efforts.[3] The Chicago and New York City litigations also refer repeatedly to United States involvement in Viet Nam (in this regard, at least some of the filings in the instant case appear to recycle allegations that were at the heart of the New York litigation (*see, e.g.,* D.E.

---

[3] *See, e.g., Miller v. Silverstein, et al.*, No. 93-CV-2871, Dismissal Order at 3 (E.D.N.Y. Nov. 5, 1996) (Amon, J.) ("Plaintiff also claims in his amended complaint that after he initiated this suit, Secret Service Agent Jeffrey Wise, along with the New York City Police Department and President Clinton, interfered with service of process to defendants [former President Richard] Nixon and [U.S. Army Gen. Colin] Powell by confiscating their summons. Plaintiff claims that Wise, aided by the defendants in this case, made threats against him and may have illegally entered his home and carried out an assault and battery on plaintiff's father."); D.E. 1 (complaint in the instant case) at 1 ("About mid-day Saturday 18 December 2004 in public section of third floor of Chicago Public Library at 400 South Street, Chicago, Illinois (IL), four uniformed guards of the Defendant (Chicago Public Library) assaulted . . . the Plaintiff . . . while disjointing bones of hands and expertly inflicting in full public view of Defendant's other employees and patrons during less than three minutes compartment syndrome to muscle of lower right leg of Plaintiff by means of severe systematic beating avoiding bones. The torture-murder system is new to police of the United States, but Plaintiff was told if it by Iranian Army Officers in 1958 . . . .").

35 at 2 (Plaintiff's response to motion to dismiss) (discussing Mr. Miller's contention that his colleagues in Vietnam had been ordered to "murder investigative reporters attempting to research the Kennedy assassination," and alleging how Mr. Miller "was required to avoid interfering with Army assassins while doing deep penetration reconnaissance of the Cold War"))—although the present complaints and filings reference current and past American military campaigns as well. *See also, e.g.,* D.E. 47 (discussing alleged activities of President Franklin D. Roosevelt, and other U.S. Presidents, including President George W. Bush, and stating that "federal assassins murdered residents of the Irish Free State, Spain, Portugal, and other neutral nations during World War II," that "[t]housands of people have already been murdered in retaliation for federal assassinations," and that "[m]eans for more massive retaliation against federal murders of Muslims are available in Korea, Pakistan and elsewhere and said to be under development in Iran and elsewhere.").

With more specific regard to the pending complaints in the instant case, Plaintiff alleges that on December 18, 2004, he was conducting research at the Harold Washington Library (the main branch of CPL), which is located at 400 S. State Street in downtown Chicago.[4] (D.E. 9 at 2.) According to Mr. Miller, four uniformed library guards assaulted him and confiscated his research notes. (*Id.*) Specifically, Plaintiff maintains that, in a public assault in the library, the four guards subjected him to "compartment syndrome to muscle of lower right leg of Plaintiff by means of severe systematic beating avoiding bones," a technique that Mr. Miller was made aware of "by Iranian Army Officers in 1958" and one that "is being learned by American military police in Iraq and Afghanistan." (*Id.*) Plaintiff alleges that the library guards prevented him from

---

[4] The facts are taken from Plaintiff's First Amended Complaint, which supersedes the factual and/or legal allegations set forth in the initial Complaint. *See, e.g., 188 LLC v. Trinity Indus. Inc.*, 300 F.3d 730, 735 (7th Cir. 2002).

5

receiving necessary medical care, and as a consequence, he may suffer potentially fatal blood clots. (*Id.* at 2-3.) Plaintiff further alleges that the library guards confiscated his research materials as part of an ongoing effort by various levels of government (municipal, state, and federal) to suppress his investigation into the activities of the United States Central Intelligence Agency ("CIA"). (*Id.*) In this regard, Plaintiff maintains that he was ordered by the CIA to murder American citizens, and contends that he personally informed Illinois Governor Rod Blagojevich of these alleged crimes. (*Id.*) Plaintiff also makes reference to post-traumatic stress disorder and battle fatigue and his efforts to uncover war crimes and other misdeeds. (*See id.* at 2-3; *see also* D.E. 47 at 4 (seeing "arrangement for examination of witnesses electronically with . . . agencies of the Netherlands, nations of former Yugoslavia, Russia, Lebanon, Vietnam, Laos, Cambodia and elsewhere federal assassinations or related crimes shall be alleged in these proceedings.").)

## ANALYSIS

### A.  Standard of Review

Ordinarily, a plaintiff must prepay court fees or provide security therefor; otherwise, the Court has the discretion to impose sanctions, including dismissing the complaint without prejudice. *See* N.D. Ill. Local Rule 3.3. However, 28 U.S.C. § 1915, and Local Rule 3.3 as well, permit a court to authorize the commencement of a suit, action, or proceeding without prepayment of fees by a person who submits an affidavit that demonstrates that they cannot afford to pay such fees.

Once a person files an application to proceed *in forma pauperis*, the Court must analyze the claims advanced in the complaint and dismiss them if the Court determines that the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary

relief from a defendant who is immune from such relief. *See* 28 U.S.C. § 1915(e)(2)(B)(I)-(iii). This independent review is mandatory, even in cases where the plaintiff subsequently pays the filing fee or any portion thereof. 28 U.S.C. § 1915(e)(2); *see also Brinson v. McKeeman*, 992 F. Supp. 897, 904 & n.18 (W.D. Tex. 1997) (once a plaintiff files leave to proceed *in forma pauperis*, the court must review the complaint under § 1915(e)(2), even if the plaintiff subsequently pays the filing fee).

A claim is frivolous within the meaning of Section 1915(e)(2)(I) when it, *inter alia*, lacks an arguable basis in law or in fact. *See, e.g., Baker v. AME Church Judicial Council*, 320 F. Supp. 2d 786, 788 (N.D. Ind. 2004) (collecting cases, including *Denton v. Hernandez*, 504 U.S. 25, 31 (1992)). The standard of review for failure to state a claim under 1915(e)(2)(B)(ii) is the same standard used when reviewing a motion to dismiss under Fed. R. Civ. P. 12(b)(6). *See DeWalt v. Carter*, 224 F.3d 607, 611-12 (7th Cir. 2000).

In determining whether a plaintiff's complaint fails to state a claim, a court assumes that the plaintiff's factual allegations are true and draws all reasonable inferences in his favor. *See Strasburger v. Bd. of Educ.*, 143 F.3d 351, 359 (7th Cir. 1998). A complaint is required to set forth "a short and plain statement of the claim that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 168 (1993) (citations and internal quotation marks omitted).

B. Systemic Deficiencies in the Complaint

Miller initially presented this action for filing and requested leave to proceed *in forma pauperis*; consequently, the Court is obligated under § 1915(e)(2) to determine whether the claim is frivolous or malicious, fails to state a claim, or seeks damages against an immune defendant.

Although it appears that the $250 filing fee has been paid in the removed case, No. 06-300, independent review is mandatory even in cases where a person subsequently pays the entire fee "or any portion thereof." 28 U.S.C. § 1915(e)(2). Thus, for the reasons stated below, the Court has an obligation to dismiss the complaint because it seeks to sue immune defendants, fails to propose colorable claims, and/or fails *Denton* review.

1. Standing

In order to have standing to assert a given claim, Plaintiff must demonstrate "(I) an injury in fact, which is an invasion of a legally protected interest that is concrete and particularized and, thus, actual or imminent, not conjectural or hypothetical; (ii) a causal relationship between the injury and the challenged conduct, such that the injury can be fairly traced to the challenged action of the defendant; and (iii) a likelihood that the injury will be redressed by a favorable decision." *Lee v. City of Chicago*, 330 F.3d 456, 468 (7th Cir. 2003) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)). With respect to the injury-in-fact requirement, Plaintiff "must establish that [he] has sustained or is immediately in danger of sustaining some direct injury." *Wis. Right to Life, Inc. v. Schober*, 366 F.3d 485, 489 (7th Cir. 2004) (citation omitted). Put differently, Mr. Miller cannot litigate claims on behalf of others in this suit for injuries he has not suffered. *See, e.g., id.* A litigant "needs to show a 'reasonable probability' that . . . [he] will suffer 'tangible harm,'" and "[m]ere speculation is not enough to establish an injury in fact." *Id.* (internal citations omitted).

Given the narrative style of the First Amended Complaint, and the substance of it, it is not always clear what "crimes" Plaintiff seeks to redress. However, to the extent he is seeking redress, Plaintiff references a number of potential claims for which he does not appear to have standing. These include, for example: (1) CIA murders of American citizens dating back to 1969

and federal assassinations of foreign nationals dating to World War II (*see, e.g.*, D.E. 9 at 2); (2) "preemptive war against the peoples and nation of Iraq" (*id.*); and (3) torture by American military police in Iraq and Afghanistan (*id.*). Because he lacks standing, Plaintiff cannot pursue such claims. *Accord, e.g., Miller v. Silverstein, et al.*, No. 93-CV-2871, Dismissal Order at 8-13 (E.D.N.Y. Nov. 5, 1996) (Amon, J.) (dismissing all claims against President Clinton, former President Nixon, and Colin Powell on grounds of standing, political question, and justiciability grounds) (collecting extensive precedent).

2. Immunity Issues

President George W. Bush is one of the proposed Defendants. Precedent teaches that a President enjoys absolute immunity from civil damage suits based upon any conduct within the "outer perimeter" of his official responsibilities. *Nixon v. Fitzgerald*, 457 U.S. 731, 756 (1982). To the extent that Plaintiff attempts to state a claim against President Bush, concerning his efforts as Commander in Chief and President, those efforts are well within the "outer perimeter" of his presidential responsibilities. *Accord, e.g., Miller v. Silverstein, et al.*, No. 93-CV-2871, Dismissal Order at 8 n.4 (E.D.N.Y. Nov. 5, 1996) (Amon, J.) (discussing dismissed claims against, *inter alia*, President Clinton and former President Nixon) (citing *Nixon v. Fitzgerald*, 457 U.S. 731 (1982)).

Immunity also is available in this suit to the FBI. Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit. *See Loeffler v. Frank*, 486 U.S. 549, 554 (1988) ("Absent a waiver of sovereign immunity, the Federal Government is immune from suit") (citing *United States v. Sherwood*, 312 U.S. 584, 586 (1941)); *Fed'l Housing Admin. v. Burr*, 309 U.S. 242, 244 (1940). Section 1983 of Title 42 does not provide a remedy against federal officials or agencies, as Section 1983 did not even abrogate the sovereign immunity of the

States, *see Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66 (1989), much less waive the federal government's sovereign immunity. While *Bivens v. Six Unknown Named Agents of Fed. Bur. of Narcotics*, 403 U.S. 388 (1971), can provide a cause of action against federal officials for constitutional torts, it does not waive sovereign immunity for actions against the United States and its agencies and departments. *See id.*, 403 U.S. at 410 ("[H]owever desirable a direct remedy against the Government might be as a substitute for individual official liability, the sovereign still remains immune to suit.") (Harlan, J. concurring in judgment); *accord, e.g., Jaffee v. United States*, 592 F.2d 712, 717-18 (3d Cir. 1979); *Duarte v. United States*, 532 F.2d 850, 852 (2d Cir. 1976).[5] In addition, the Federal Tort Claims Act waives sovereign immunity for some suits against the United States; however, it does not permit suits for alleged constitutional torts. *See* 28 U.S.C. § 1346(b); *FDIC v. Meyer*, 510 U.S. 471, 477 (1994) (constitutional torts not cognizable under FTCA). Under the case as proposed, the Federal Bureau of Investigation is immune from Mr. Miller's suit.

The defendants who are state entities (*i.e.*, Illinois Attorney General) also are not amenable to § 1983 suits. *See Will*, 491 U.S. at 64, 71 (States not "persons" under § 1983, and a suit against a state officer in his or her official capacity is a suit against the State); *Quern v. Jordan*, 440 U.S. 332, 342-43 (1979) (Section 1983 does not abrogate States' Eleventh Amendment immunity). Plaintiff has not suggested that the Illinois Attorney General is acting in her personal capacity, and precedent instructs that the allegations should be construed, as they are most naturally here, to relate to the actions of the Illinois Attorney General taken in her official

---

[5] In *Nixon v. Fitzgerald*, the Supreme Court explained that *Bivens* cannot be understood to provide a cognizable civil cause of action against a former or current President for actions taken in connection with his official efforts as Commander in Chief or President of the United States of America. *See id.*, 457 U.S. 731, 748 n. 27, (1982); *see also id.* at 754.

capacity. *See, e.g., Stevens v. Umstead*, 131 F.3d 697, 706 (7th Cir. 1997) (collecting cases). Moreover, the Court notes that the Plaintiff seeks damages from the Attorney General (in the amount of $9,000,000), which is impermissible. *See, e.g., id.* ("It is well established, of course, that any claim for damages under 42 U.S.C. § 1983 against state officials in their official capacities must be dismissed as barred by the Eleventh Amendment.") (internal quotation marks omitted; collecting numerous cases).

3. Statute of Limitations Issues

As explained, Section 1915(e) requires the Court to dismiss any case or part of a case that is, *inter alia*, frivolous or fails to state a claim upon which relief can be granted. "The statute of limitations is an affirmative defense. Complaints need not anticipate or plead around affirmative defenses . . . under Rule 12(b)(6)." *Leavell v. Kiefer*, 189 F.3d 492, 494 (7th Cir. 1999) (citations omitted). "Neither does a statute of limitations affect the district court's jurisdiction." *Id.* (citations omitted). However, a plaintiff may "plead himself out of court if he alleges facts that conclusively demonstrate that his claim is time-barred." *See Kauthar SDN BHD v. Sternberg*, 149 F.3d 659, 670 n.14 (7th Cir. 1998) (collecting cases). In such instances, "the suit can be regarded as frivolous" and "the district judge need not wait for an answer before dismissing the suit." *Walker v. Thompson*, 288 F.3d 1005, 1009 (7th Cir. 2002) (collecting cases); *accord, e.g., Leavell*, 189 F.3d at 495-96 (affirming dismissal on the pleadings on statute of limitations grounds); *Kauthar*, 149 F.3d at 670-71 & n.14 (7th Cir. 1998) (affirming dismissal under Rule 12(b)(6) on limitations grounds and collecting numerous appellate authorities); *Moore v. State of Indiana*, 999 F.2d 1125, 1129-30 (7th Cir. 1993) (affirming denial of leave to amend complaint because such amendment would be futile, in that proposed new claims would be properly dismissed as time-barred under Rule 12(b)(6)).

For purposes of a lawsuit advanced under 42 U.S.C. § 1983, a claim accrues when the plaintiff knows or should have known that his constitutional rights have been violated. *Kelly v. City of Chicago*, 4 F.3d 509, 511 (7th Cir. 1993). Because Plaintiff's injury occurred in Illinois, he must bring suit within two years after the cause of action accrued. *See, e.g., Booker v. Ward*, 94 F.3d 1052, 1056 (7th Cir. 1996) (citing *Farrell v. McDonough*, 966 F. 2d 279, 282 (7th Cir. 1992)). Thus, any causes of action Miller may have had relating to events that occurred before December 19, 2003 are time-barred, in that nothing in the operative complaints even suggests tolling could be applicable. *Accord, e.g., Leavell*, 189 F.3d at 495-96; *Kauthar*, 149 F.3d at 670-71 & n.14; *Moore*, 999 F.2d at 1129-30. These include Mr. Miller's extensive allegations about the Vietnam war and his allegations concerning the activities of Presidents Franklin D. Roosevelt, John F. Kennedy, and Richard M. Nixon.

### C. Defendants' Motions to Dismiss

#### 1. The Illinois Attorney General's Motion to Dismiss

The Illinois Attorney General's motion to dismiss is granted because the Eleventh Amendment does not permit the Court to entertain this money damages suit against the Illinois Attorney General. *See Quern*, 440 U.S. at 342-43; *Stevens*, 131 F.3d at 706 ("It is well established, of course, that any claim for damages under 42 U.S.C. § 1983 against state officials in their official capacities must be dismissed as barred by the Eleventh Amendment.") (internal quotation marks omitted; collecting numerous cases). Moreover, the Office of Illinois Attorney General in its official capacity is part of the State of Illinois and therefore cannot be sued in any event under Section 1983. *See Will*, 491 U.S. at 64, 71 (States not "persons" under § 1983, and a suit against a state officer in his or her official capacity is a suit against the State).

Moreover, even if the Court were to have jurisdiction over this claim, it appears that

Plaintiff fails to state a claim against the Illinois Attorney General. The First Amended Complaint does not allege any connection between the Illinois Attorney General and the acts of the library guards, so Attorney General Madigan is not potentially accountable for the alleged assault by the library guards using the Iranian Army techniques. For a particular individual defendant to be liable under Section 1983, that defendant must have personally participated in or caused the alleged unconstitutional actions. *See, e.g., Alejo v. Heller*, 328 F.3d 930, 936 (7th Cir. 2003) (citing *Duncan v. Duckworth*, 644 F.2d 653, 655 (7th Cir. 1981)); *Palmer v. Marion County*, 327 F.3d 588, 594 (7th Cir. 2003) (collecting cases and stating that, "[Section] 1983 lawsuits against individuals require personal involvement in the alleged constitutional deprivation to support a viable claim."). Furthermore, any allegation of Attorney General Madigan's involvement in a conspiracy to hide information about CIA assassinations and to further such federal assassinations could not survive review under *Denton*.[6]

2. The Federal Defendants' Motion to Dismiss

The Federal Defendants' Motion to Dismiss is granted on the grounds that the FBI is immune from this particular suit. Furthermore, the Motion to Dismiss is granted on the independent basis that Plaintiff fails to state a claim against the FBI. Section 1983 by its express terms applies to state actors. *See* 42 U.S.C. § 1983 (allowing suit against any "person who, under color of any statute, ordinance, regulation, custom, or usage, of any State" deprives someone of a

---

[6] In his response to the Illinois Attorney General's motion to dismiss, Plaintiff makes vague allegations relating to Illinois Attorney General Lisa Madigan's involvement in drug and/or prostitution enterprises and more specific allegations concerning her involvement in the destruction of Mr. Miller's property. (D.E. 16 at 1-2.) These allegations cannot survive review under *Denton*. Furthermore, these allegations are procedurally improper, because if a complaint fails to state a claim, the plaintiff cannot attempt to cure the deficiency by including allegations in a pleading that is not either a complaint or an amendment to a complaint. *See Dawson v. General Motors Corp.*, 977 F.2d 369, 372 (7th Cir. 1992); *see also Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir. 1984).

federal right). No federal statute creates a private right of action for suits alleging that the FBI failed to respond to an incident report submitted by a private citizen. Moreover, it is clear that any claim against the only putative FBI agent even referenced in Mr. Miller's papers—an Agent "John W. Robinson," who was not named as a defendant—would be both time-barred and likely independently subject to dismissal on grounds of defensive non-mutual collateral estoppel.

In this regard, the Court notes that Mr. Miller complained of the inaction of "Agent Robinson" in his federal lawsuit in New York City in the 1990s. *See* Appeal Brief of Mr. Miller in *Miller v. Silverstein, et al.*, No. 96-6303 (United States Court of Appeals for the Second Circuit), 1997 WL 33773572 at *3 (Mr. Miller contending that, while serving as one of the "deep penetration patrol leaders" in the Vietnam War, he wanted to provide information to the U.S. Department of Justice about orders to murder American citizens, but "Federal Bureau of Investigation Special Agent John W. Robinson told the appellant the Justice Department would not accept the information because those matters are in the jurisdiction only of the CIA.").[7] Given that the Vietnam War ended in April 1975, any statements or actions of a "Special Agent Robinson" are not the subject of timely suit; any doubt on this score is confirmed by the fact that the alleged discussions with Mr. Robinson occurred before the end of the Second Circuit litigation in 1997. In addition, and independently, given that all of the claims in the New York City litigation were rejected as failing to state any colorable claim (or, in the Second Circuit, to survive even initial frivolousness review), any claim against the non-Defendant Special Agent Robinson would appear to be barred under collateral estoppel principles. *See also Miller v. Silverstein, et al.*, 522 U.S. 998 (1997) (denying Mr. Miller's petition for certiorari to review the

---

[7] The complete briefs in the Second Circuit litigation are available on Westlaw. The citations to the briefs are listed at the end of the Second Circuit's decision.

judgment of the Second Circuit); *see also Miller v. Silverstein, et al.*, 122 F.3d 1056, 1997 WL 557620 at *1 (2d Cir. 1997) (unpublished) (reflecting that unpublished Second Circuit authority can be used for purposes of res judicata and estoppel).

    3.    The CPD's Motion to Dismiss

The Court grants the CPD's Motion to Dismiss on the grounds that CPD is not a suable entity. *See, e.g., Chan v. Wodnicki*, 123 F.3d 1005, 1007 (7th Cir. 1997) (police departments in Illinois lack separate legal existence); *accord Chan v. City of Chicago*, 777 F. Supp. 1437, 1442 (N.D. Ill. 1991); *Reese v. Chicago Police Dep't*, 602 F. Supp. 441, 443 (N.D. Ill. 1984) (collecting cases). Furthermore, the Court notes that no individual law enforcement officers are named as defendants in this suit, and the City of Chicago cannot be responsible under Section 1983 based on a *respondent superior* theory in any event. In this regard, it is well established that a municipality is not liable under Section 1983 unless the alleged constitutional violation is official policy rather than abuses on the initiative of individual agents. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690-91 (1978). It appears clear (at least within the meaning of *Denton*) that Miller is complaining about particular acts of individual officers, rather than city-wide or county-wide practices; accordingly, the City of Chicago (the actual party of interest for CPL and CPD) is not potentially liable to Mr. Miller under Section 1983 in this suit. Finally, any putative claim that the Chicago Police Department is part of an international conspiracy to cover-up federal assassinations of Presidents dating from Franklin D. Roosevelt, through Presidents Kennedy, Clinton, and George W. Bush, does not survive even the most generous reading of *Denton* review.

    4.    Remaining Claims against CPL

While CPL did not submit a motion to dismiss, the Court is obligated by 28 U.S.C. §

15

1915(e) to review the sufficiency of the complaint. The Chicago Public Library is a branch of the City of Chicago—*see* Chicago Municipal Code § 2-64-010; *see also Johnson v. City of Chicago*, 807 N.E.2d 1100, 1101 (Ill. App. Ct. 2004)—and thus is not a proper defendant here. Moreover, and independently, Plaintiff has failed to state a claim against the City of Chicago because he has not alleged that his injuries stem from an official policy or practice maintained by the City of Chicago (again, no individual officers are defendants here). *See Monell*, 436 U.S. at 690-91; *McTigue v. City of Chicago*, 60 F.3d 381, 382 (7th Cir.1995) (requisite policy, custom, or practice for purposes of *Monell* requires (1) an ordinance or written directive; (2) a persistent and well-settled custom that rises to the level of a de facto policy; or (3) an action taken by a person with final policymaking authority). To the extent Mr. Miller could be understood to allege that the Chicago public library or its librarians have conspired to interfere with his CIA research as part of a scheme to coverup federal assassinations, and/or to have joined a plot to have him assaulted using techniques developed by the Iranian Army in the 1950s, that contention respectfully cannot be squared with the review prescribed by *Denton*, *supra*, and Section 1915(e).

## CONCLUSION

For the aforementioned reasons, most of which operate independently, Plaintiff's motions are denied. Defendants' motions to dismiss (D.E. 13, 30, 37) are granted. The claims against President George W. Bush, Illinois Attorney General Lisa Madigan, the Federal Bureau of Investigation, the Chicago Public Library, and the Chicago Police Department are dismissed with prejudice for the reasons stated and under 28 U.S.C. § 1915(e) and caselaw interpreting it. The applications for leave to proceed *in forma pauperis* (D.E. 7, 41) and the motion for appointment of counsel (D.E. ) are denied as moot.

So ordered.

Mark Filip
United States District Judge
Northern District of Illinois

Dated: 4-11-06